# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERRY L. STEVENS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-14-278-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Terry L. Stevens requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 29, 1962, and was fifty years old at the time of the administrative hearing (Tr. 42). He completed tenth grade, and has worked as a truck driver and dump truck driver (Tr. 35, 211). The claimant alleges that he has been unable to work since July 1, 2011, due to joint pain; pain in his back, knees, neck, arms, and hands; high blood pressure; and lumbar problems (Tr. 211).

## Procedural History

On July 5, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Bernard Porter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 25, 2013 (Tr. 25-37). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, he could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently; only

occasionally use hand controls; stand, walk, and sit six hours out of an eight-hour workday, except he required a sit/stand option allowing for a change of position every thirty minutes, with time off tasks accommodated by normal breaks; he could never climb ladders, scaffolds, or crawl; and he should avoid temperature extremes (Tr. 28-29). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, children's attendant, arcade attendant, and ticket taker (Tr. 36).

**Review**

The claimant contends that the ALJ erred: (i) by assigning no weight to the opinions of his long-time treating providers, (ii) by failing to properly assess whether he met Listing 1.04, (iii) by failing to support the light work RFC with substantial evidence, (iv) by ignoring evidence in the record to discredit his credibility, (v) by failing to fully develop the record, and (vi) by improperly identifying work he could perform. The undersigned Magistrate Judge finds the ALJ *did* make a number of errors at step four, particularly related to the claimant's credibility, and the decision of the Commissioner should therefore be reversed.

The ALJ found that the claimant had the severe impairments of hypertension, obesity, generalized osteoarthritis, and lumbar degenerative disc disease (Tr. 27). Medical records reveal that he largely received treatment at Choctaw Nation Indian Health Clinic, and they indicate that he underwent an MRI of the lumbar spine on January 28, 2011, which revealed diffuse spondylosis deformans with central neuroforaminal stenosis throughout the lumbar spine, and epidural lipomatosis (Tr. 274).

Treatment notes reflect continued reports and treatment of low back pain and arthritis and that he was denied a neurology referral due to his lack of coverage (Tr. 277-300, 314-316, 350-370).

On June 15, 2011, Gwen Hendrix, PA-C, from Choctaw Nation Health Services, submitted a letter stating that the claimant suffered from chronic lumbar pain, that a recent MRI demonstrated degenerative disc disease of the lumbar spine with stenosis, and that he was unable to perform any type of activity (Tr. 276). On July 7, 2011, Ms. Hendrex completed a medical statement of the claimant's ability to work, submitted to the Oklahoma Employment Security Commission, which stated the claimant had multilevel degenerative disc disease rendering him unable to work due to physical limitations (Tr. 336-338). On September 18, 2012, Gwen Hendrex completed a Lumbar RFC Questionnaire, noting that she had been treating him for eight years, and attaching the most recent MRI to her opinion (Tr. 320-321). Her diagnosis was multilevel degenerative disease, spondylosis, and stenosis, based on the MRI and CT scans, and indicated that his symptoms constantly interfered with his attention and concentration (Tr. 321-322). She indicated that he could sit and stand only ten minutes at one time, and for less than two hours in an eight-hour workday, that he would need to walk around every ten minutes for approximately ten minutes, would need a sit/stand option, and would sometimes need to take unscheduled breaks (Tr. 323). On November 27, 2012, Dr. Doug Hendrex, M.D., who also worked for the Choctaw Nation Health Services at the Stigler Clinic, wrote another letter stating that the claimant was unable to work due to

chronic lumbar back pain due to degenerative disc disease at multiple levels and resulting spinal stenosis (Tr. 348).

On August 12, 2011, Dr. Luther Woodcock reviewed the claimant's medical record and determined that he could perform light work but could only occasionally climb ramps/stairs/ladders/scaffolds, balance, stoop, kneel, crouch, or crawl (Tr. 307). He noted the January 2011 MRI, that the claimant was denied a referral to a neurologist, and that he had, *inter alia*, decreased range of motion in the lower back (Tr. 307).

In his written opinion, the ALJ summarized the claimant's hearing testimony and much of the medical evidence. Specifically, he noted the claimant's two MRIs, from 2011 and 2012, showing no significant changes between them; that he was denied a referral to a neurologist; and that he had an unremarkable physical examination shortly after the first MRI (Tr. 31). He then noted the claimant's reported daily activities including: attending to his own personal care, taking medications without reminders, preparing simple meals, performing chores such as feeding his dogs, checking the mail, and taking out the trash (Tr. 32). He stated that the claimant received unemployment benefits and that "[t]here is no believable evidence of record" to find that the claimant told them he was unable to work, concluding that the claimant had made false and/or misleading statements which eroded his credibility (Tr. 32-33). The ALJ did not acknowledge the document in the record indicating that the document submitted to the Oklahoma Employment Security Commission, stating that the claimant was unable to work, was signed by both the claimant and Ms. Hendrex (Tr. 338). The ALJ then rejected the opinions of Ms. Hendrex and Dr. Hendrex, finding that even though they

treated him for eight years, their treatment notes had no objective medical evidence supporting their statements, and that the MRIs showed no change and a physical exam was "essentially unremarkable." He then stated that he had adopted Dr. Woodcock's opinion that the claimant could perform light work, but added the occasional use of hand controls and the sit/stand option due to unspecified evidence and testimony from the administrative hearing (Tr. 35). The ALJ did not explain why his RFC findings did not adopt Dr. Woodcock's recommendation for occasional postural limitations related to balancing, stooping, kneeling, crouching, or crawling (Tr. 35).

Deference is generally given to an ALJ's credibility determination, unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias*, 933 F.2d at 801. In assessing a claimant's complaints of pain, an ALJ may disregard a claimant's subjective complaints if unsupported by any clinical findings. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). The Court finds that the ALJ's evaluation of the claimant's credibility fell below these standards. The specific reasons given by the ALJ for finding that the claimant's subjective complaints were not credible are not entirely supported by the record. For example, the ALJ discounted the claimant's credibility because he could

manage his own personal hygiene, and perform other activities of daily living (Tr. 32), while ignoring evidence indicating that the claimant had stopped hunting and fishing, using the weed eater in his lawn, and only visited people about once a week (Tr. 50). *See Frey*, 816 F.2d at 516-17 ("Nor does the ALJ's citation of 'daily activities' indicate substantial evidence refuting Frey's complaint of disabling pain or its credibility. . . . [T]he claimant had performed a few household tasks, had worked on his cars, and had driven on occasional recreational trips. . . . [S]poradic performance does not establish that a person is capable of engaging in substantial gainful activity."), *citing Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983).

Further examination of these perceived inconsistencies indicates that although the ALJ cited all the available evidence, he only interpreted it in a manner favorable to his foregone conclusions and ignored evidence that did not support his conclusions. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984). For instance, the ALJ ignored evidence that the claimant was forthright in his application for unemployment benefits by soliciting a statement from his treating provider that he was unable to work, instead stating (without acknowledging the evidence in the record) that there was no believable evidence that the claimant had not lied (Tr. 32). The ALJ also used this misinterpretation of the evidence to undermine the opinions from Dr. Hendrex and Ms. Hendrex, which was further error. *See also Taylor v. Schweiker*, 739 F.2d 1240,

1243 (7th Cir. 1984) ("'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982).

"Because a credibility assessment requires consideration of all the factors in combination, when several of the factors *relied upon* by the ALJ are found to be unsupported or contradicted by the record, [the Court is] precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination." *Bakalarski v. Apfel*, 1997 WL 748653 at *3 (10th Cir. 1997). Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis of the claimant's credibility. On remand, the ALJ should properly evaluate the evidence, then re-assess the claimant's credibility. If the ALJ's subsequent credibility analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

Furthermore, although the ALJ was clearly not required to give controlling weight to any opinion by Dr. Hendrex or Ms. Hendrex to the effect that the claimant was unable to work, *see* 20 C.F.R. § 416.927(e)(1) ("A statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled."), he nevertheless should have determined the proper weight to give such opinions rather than rejecting them outright. An opinion on an issue reserved to the Commissioner is not entitled to special significance, 20 C.F.R. § 416.927(e), but the ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or

decision of disability, including opinions from medical sources about issues reserved to the Commissioner." *See Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002), *quoting* Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3. The ALJ's finding that the opinions were inconsistent with medical evidence and treating notes might have justified the refusal to accord controlling weight if the ALJ had not misstated evidence, but the ALJ would have nevertheless been required to determine the proper weight to give those opinions by applying the *Watkins* factors. *See Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004) ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]."), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ failed to perform any of this analysis.

Because the ALJ refused to discuss probative evidence inconsistent with his RFC determination, the undersigned Magistrate Judge finds he did not properly consider it. Consequently, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's RFC. If on remand there is any adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus

RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 11th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**